UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CHARLES D. BROWN                                                                            PLAINTIFF

V.                                                              CIVIL ACTION NO. 3:16-CV-587-DPJ-FKB

FOWLER GAMES, INC.                                                                          DEFENDANT

ORDER

Defendant Fowler Games, Inc., seeks summary judgment on Plaintiff Charles D. Brown's employment-discrimination claims against it, arguing that it was not Brown's employer. Because Brown has created a question of fact on this issue, Fowler's Motion for Summary Judgment [21] is denied.

I.      Facts and Procedural History

Since 1989, Plaintiff Charles D. Brown, who is black, has performed seasonal work at the Mississippi State Fair in Jackson, Mississippi. In or around 2004 or 2005, he began working under David "Taco" Sanchez. Sanchez leased several game booths from Defendant Fowler Games, Inc., which, in turn, leased space from North American Midway.

In October 2015, Brown called Sanchez about working his booths that year, and Sanchez advised Brown when to report to the fairgrounds to begin set-up. Brown reported for work on Monday, October 5, and was issued a badge with the North American Midway name and logo on the front and "Fowler Games" on the back. On Friday, October 9, Brown says Sanchez referred to him with a racial slur, terminated his employment, and replaced him with a white worker.

Brown filed a charge of discrimination with the EEOC, and on July 26, 2016, he filed this lawsuit against Fowler, asserting claims under Title VII and § 1981 for race discrimination and retaliation. He also asserted a state-law claim for negligent infliction of emotional distress. *See*

Am. Compl. [4] at 4. Following the close of discovery, Fowler filed its summary-judgment motion on the federal claims. The Court has personal and subject-matter jurisdiction and is now prepared to rule.

II.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.     Analysis

Fowler says it is entitled to summary judgment on Brown's employment-discrimination claims because it was not his employer for purposes of liability under Title VII or § 1981. Title VII proscribes discrimination by "an employer." 42 U.S.C. § 2000e-2(a). Fowler argues, and Brown does not dispute, that employment-discrimination claims brought under § 1981 likewise require the existence of an employer-employee relationship between the parties. *See Anderson v. Sikorsky Support Servs., Inc.*, 66 F. Supp. 3d 863, 872–73 (S.D. Tex. 2014) ("The standard of proof for Title VII discrimination claims also applies to § 1981 claims.").

When determining whether the defendant was the plaintiff's statutory employer, the Fifth Circuit applies "the 'economic realities/common law control test.'" *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 434 (5th Cir. 2013) (quoting *Diggs v. Harris Hosp.-Methodist, Inc.*, 847 F.2d 270, 272 (5th Cir. 1988)). Here, the parties focused on the common-law control test, so the Court will do the same.

"The common law control portion of the test . . . assesses 'the extent to which the one for whom the work is being done has the right to control the details and means by which the work is to be performed.'" *Id.* (quoting *Diggs*, 847 F.2d at 272). The Fifth Circuit has identified the following factors as "pertinent to the analysis":

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated [,] *i.e.*, by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"[,] (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id.* at 434–35 (quoting *Diggs*, 847 F.2d at 272–73).

3

It is important to note that this test "is necessarily a fact-specific inquiry." *Muhammad v. Dall. Cty. Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 382 (5th Cir. 2007) (rejecting the district court's conclusion that a district judge is a probation officer's Title VII employer as a matter of law). So the question at this stage is whether the record creates a material factual dispute. And while Fowler easily points to evidence indicating that Brown was not its employee, there is countervailing evidence to consider. For example, the record—when viewed in the light most favorable to Brown—could support the following findings:

- The nature of the occupation required no skill and typically involved supervision. *See* Brown Dep. [24-2] at 23, 45–46, 49, 51.

- Fowler furnished the location, the equipment (including trucks), and the merchandise. Fowler Dep. [24-3] at 14.

- The method of payment was a commission paid by Fowler to Brown. According to Fowler, "I give 25 percent average *to the employee* . . . [a]nd I've got 25 percent to split with my contractor." *Id.* at 15 (emphasis added).

- Sanchez terminated Brown's employment without notice. Brown Dep. [24-2] at 58–60.

- There was no written contract between Fowler and Sanchez. Fowler Dep. [24-3] at 14–15.

- Fowler maintained control over the game booths and the employees. For example, Brown testified that Sanchez worked for Joey Fowler as his right-hand man, Brown Dep. [24-2] at 49; that Joey Fowler had general authority over all employees, including those working directly under Sanchez, *id.* at 51; that the various Fowler crews operated like "a bike chain with Joey Fowler being the master link," *id.* at 54; and that Brown would work for Fowler's other booths when directed to do so, *id.* at 22. Joey Fowler himself testified that he "ke[pt] control of knowing how much money they're actually making," Fowler Dep. [24-3] at 14; *see also id.* at 38; that he provided the merchandise (i.e. prizes) so he could "control" the profit margins, *id.* at 15; that Sanchez "would have been in major trouble" had Brown come to Joey Fowler with his complaint, *id.* at 26; that he directed Sanchez to handle Brown's EEOC complaint, *id.* at 26–27; that he could terminate "contractors" who caused problems, *id.* at 25–26; and that he was involved in the way the games were run, *id.* at 15–16.

- Brown's fair-identification badge "identified him as an employee with Fowler Games and North American Midway Shows." Pl.'s Mem. [25] at 2; *see* Fowler Dep. [24-3] at Ex. 4.

4

This list is not intended to be exhaustive, and it is based on the evidence when viewed under the Rule 56 standard. Based on that standard, there is at least a fact question regarding factors 1, 2, 3, 6, 8, and 11. Other factors, like the absence of tax and social security withholdings, support Fowler, but there is enough here to create a material factual dispute whether Fowler employed Brown.

As a final note, Brown also brought a state-law claim that Fowler did not specifically address in its summary-judgment motion or supporting memorandum. So at least that claim must move forward. And as the Fifth Circuit often states, "[e]ven if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

IV. Conclusion

The Court has considered all arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Defendant's Motion for Summary Judgment [21] is denied.

**SO ORDERED AND ADJUDGED** this the 29th day of November, 2017.

s/ *Daniel P. Jordan III*  
CHIEF UNITED STATES DISTRICT JUDGE